1

2

3

4

5

UNITED STATES DISTRICT COURT
6
WESTERN DISTRICT OF WASHINGTON
7                             AT SEATTLE

8    MILA H.,

9                          Plaintiff,          CASE NO. C18-5363-MJP-MAT

10        v.
                                               REPORT AND RECOMMENDATION
11   NANCY A. BERRYHILL, Deputy                RE: SOCIAL SECURITY DISABILITY
     Commissioner of Social Security for       APPEAL
12   Operations,

13                          Defendant.

14

15        Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

16   the Social Security Administration (Commissioner).    The Commissioner denied plaintiff's

17   application for Supplemental Security Income (SSI) after a hearing before an Administrative Law

18   Judge (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all

19   memoranda, the Court recommends this matter be REMANDED for further proceedings.

20                        **FACTS AND PROCEDURAL HISTORY**

21        Plaintiff was born on XXXX, 1975.[1]  She completed the ninth grade and obtained her GED.

22

23
     _____

        [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

     REPORT AND RECOMMENDATION
     PAGE - 1

1    (*See* AR 232.)  She has no past relevant work.    (*See* AR 97, 469.)

2        Plaintiff filed an SSI application on March 8, 2007, alleging disability beginning February

3    1, 2007. (AR 91, 114.)   Her application was denied initially and on reconsideration.

4        On July 7, 2009, ALJ Donald J. Willy held a hearing, taking testimony from plaintiff, a

5    medical expert, and a vocational expert (VE).  (AR 20-44.)  On July 30, 2009, the ALJ found

6    plaintiff not disabled since the March 8, 2007 application date.  (AR 12-19.)  *See* 20 C.F.R. §

7    416.335 (SSI not payable prior to the month following the month of application).

8        Plaintiff timely appealed and the Appeals Council denied the request for review on

9    February 5, 2011 (AR 1-4), making the ALJ's decision the final decision of the Commissioner.

10   Plaintiff appealed the final decision to this Court.  In an order dated March 12, 2012, the Court

11   remanded to the Commissioner for further proceedings.  (AR 622-41.)  The Appeals Council

12   remanded for further proceedings consistent with the order of the Court.  (AR 649.)

13       On December 10, 2013, ALJ Glenn Meyers held a second hearing, taking testimony from

14   plaintiff and a VE.  (AR 485-538; *see also* AR 479-84 and AR 539-48 (hearings postponed due to

15   sick child and lack of representative).)   In a decision dated January 10, 2014, the ALJ found

16   plaintiff not disabled.  (AR 654-66.)  Plaintiff appealed and the Appeals Council, on November 6,

17   2014, remanded the matter back to the ALJ for further proceedings.  (AR 675-78.)

18       ALJ Meyers held a third hearing on March 17, 2016, taking testimony from plaintiff, a VE,

19   and plaintiff's mother.  (AR 549-606.)  In a decision dated November 29, 2016, the ALJ again

20   found plaintiff not disabled since March 8, 2007.  (AR 452-70.)  On March 9, 2018, the Appeals

21   Council found no reason to assume jurisdiction.  (AR 438-42; *see also* AR 444-47.)  Plaintiff

22   thereafter appealed the final ALJ decision to this Court.

23   / / /

REPORT AND RECOMMENDATION
PAGE - 2

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's right shoulder tendonitis, bipolar disorder, depressive disorder, post-traumatic stress disorder (PTSD), anxiety disorder, polysubstance abuse in full remission, and obesity severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work, except that she could reach overhead occasionally; engage in unskilled, repetitive, routine tasks in two-hour increments; have superficial, incidental contact with the public, work in proximity, but not in coordination with co-workers, and have occasional contact with supervisors; would be off-task at work up to nine percent of the time, but still able to meet the minimum production requirements of the job; and would be absent from work once every two months. Because plaintiff has no past relevant work, the ALJ proceeded to step five.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

REPORT AND RECOMMENDATION
PAGE - 3

retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a housekeeper and small product assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering medical opinions, failing to explain or support RFC findings, and in considering lay testimony. She requests remand for further proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, the opinion of a treating or examining doctor may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where

REPORT AND RECOMMENDATION
PAGE - 4

contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can assign less weight to the opinion of an "other source," such as a counselor, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and Social Security Ruling (SSR) 06-3p, and discount such opinions with reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).[2]

Plaintiff argues the ALJ failed to give sufficient reasons for rejecting opinions of non-examining State agency psychological consultants Leslie Postovoit, Ph.D., and Cynthia Collingwood, Ph.D., failed to give specific and legitimate reasons for rejecting the opinion of examining psychologist Norma Brown, Ph.D., and failed to provide legally sufficient reasons for rejecting the opinion of treating counselor Judie Kasnick, MA, LMHC.  The Court, as discussed below, finds error in the consideration of the evidence from Dr. Brown and Kasnick.

A.    Non-Examining Psychologists

In a mental RFC assessment form dated May 16, 2007, Dr. Postovoit assessed plaintiff as either not significantly limited or moderately limited in all areas of functioning.  (AR 259-60.)  In narrative form, Dr. Postovoit opined plaintiff could perform simple tasks reliably and some more familiar complex tasks, but, given a lack of familiarity with her capabilities when clean and sober, resulting in a lack of confidence reducing her focus/concentration, "would benefit from additional supervision/support when beginning a new job situation."  (AR 261.)  She could manage intermittent contact with the public, but would find the mental multi-tasking of constantly dealing

---

[2] New regulations applicable to claims filed after March 27, 2017 include additional medical practitioners as "acceptable medical sources," such as advanced practice registered nurses, audiologists, and physician assistants, and identify all other licensed healthcare providers as "medical sources."  20 C.F.R. §§ 404.1502(a), (d), 416.902(a), (d).

REPORT AND RECOMMENDATION
PAGE - 5

1    with others on a more intense basis "to be too stressful now", and would "would manage best in

2    work opportunities that allowed her to work [with] a few co-workers or more on her own, [versus]

3    settings that required close collaboration/negotiating skills, and that had very clear duties and a

4    reliable work schedule." (AR 261-62.) Dr. Postovoit found plaintiff's allegations partially

5    credible, noting she was adjusting to a clean and sober lifestyle, "but retains many useful abilities

6    relevant to managing productive tasks, [with] the above-described limitations considered." (AR

7    262.) On August 31, 2007, Dr. Collingwood noted the most recent medical evidence showed

8    minimal symptoms, no panic attacks, and continued chemical dependency treatment, and affirmed

9    Dr. Postovoit's assessment as written. (AR 291.)

10        This Court and the Appeals Council found the earlier ALJ decisions did not explain why

11    the ALJ failed to adopt the assessed limitations regarding additional supervision/support, public

12    and co-worker contact/interactions, and clear duties and a reliable work schedule. (AR 635, 676.)

13    In the most recent decision, and in light of the longitudinal record, the ALJ rejected the opinion of

14    Drs. Postovoit and Collingwood that plaintiff could perform some complex tasks. (AR 462.) He

15    adopted "generally consistent" social limitations by limiting plaintiff to superficial, incidental

16    interaction with the public, working in proximity to, but not in coordination with co-workers, and

17    to occasional contact with supervisors. (AR 457.) Given the limitation to unskilled, repetitive,

18    and routine work, he did not find additional supervision or support necessary, explaining: "Most

19    jobs generally already provide an increased level of supervision and assistance at the start of them.

20    Even unskilled and simple level jobs are expected to involve up to 30 days of training or learning

21    period. Further, such tasks inherently include clear duties, routines, and minimal decision-

22    making." (AR 462-63.) While plaintiff alleged more drastic social limitations, the ALJ did not

23    find those consistent with the record as a whole, pointing to his earlier finding on that subject. (AR

REPORT AND RECOMMENDATION
PAGE - 6

1  463.)

2    Non-examining State agency medical and psychological consultants are highly qualified

3  and experts in the evaluation of Social Security disability claims and, while not binding, their

4  opinions must be considered.  20 C.F.R. § 416.913(b)(1); SSR 96-6p and 17-2p.  Where an RFC

5  assessment conflicts with the opinion of a medical source, the ALJ must explain why the opinion

6  was not adopted.  SSR 96-8p.

7    The Commissioner argues the opinion plaintiff "would benefit from" and "would manage

8  best" under certain circumstances did not describe conditions plaintiff required in order to work

9  and, rather, merely identified conditions that would be better than others.  She asserts the ALJ was

10  not required to account for recommendations that did not describe vocational imperatives or

11  conditions absent which the claimant would be unable to work.  *See Valentine v. Comm'r SSA*,

12  574 F.3d 685, 691-92 (9th Cir. 2009) (ALJ did not err in excluding from the RFC a psychologist's

13  statement a claimant was less likely to have difficulty with certain types of tasks, but did not

14  indicate claimant was "incapable of working except under the recommended conditions.";

15  statement reflected a recommendation on how to cope with symptoms, not a statement of

16  functional capacity).

17    An ALJ may reasonably decline to adopt a statement "offered as a recommendation, not

18  an imperative."  *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015);

19  *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  *See also Orteza*

20  *v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ required to provide reasons for rejecting opinion

21  evidence, not merely interpreting it; finding no error where ALJ reasonably found the statement a

22  claimant could adapt to a "sedentary type job" did not mean the physician opined plaintiff could

23  only perform "sedentary work" as defined in Social Security regulations).  For example, the

REPORT AND RECOMMENDATION
PAGE - 7

1  "treatment recommendations" section of a medical report may not set forth vocational imperatives

2  necessitating either adoption or rejection in relation to the RFC.   *See, e.g., Rounds*, 807 F.3d at

3  1006; *Valentine*, 574 F.3d at 691-92.  In this case, while reasonable minds could differ as to

4  whether the statements at issue reflected recommendations or imperatives, there is no dispute Dr.

5  Postovoit included the statements in a narrative functional capacity assessment. (AR 261-62.) The

6  ALJ did not, moreover, find the statements to reflect merely recommendations.  Nor would it have

7  been appropriate for the ALJ to do so given the specific directive of the Appeals Council.  (*See*

8  AR 676 (finding further consideration required because the ALJ did not adopt the opinions or

9  explain why they were not adopted).)[3]

10         The Court must address whether the ALJ provided sufficient reasons for not adopting the

11  opinions or adequately accounted for the opinions in the RFC.  Neither party addresses whether or

12  not the opinions were contradicted and/or the proper standard to apply.  Giving plaintiff the benefit

13  of the doubt, the Court herein applies the clear and convincing standard.

14         The "final responsibility" for decision issues such as an individual's RFC "is reserved to

15  the Commissioner."  SSR 96-5P.  *Accord* 20 C.F.R.  §§ 416.927(d)(2), 416.946(c).  That

16  responsibility includes "translating and incorporating clinical findings into a succinct RFC."

17  *Rounds,* 807 F.3d at 1006.  An RFC finding need not directly correspond to a specific medical

18  opinion.  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  The ALJ may incorporate a

19  doctor's opinion by assessing RFC limitations entirely consistent with, but not identical to

20  limitations assessed by the doctor.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217,

21

---

22  [3] In 2009, the ALJ did not address any of the statements currently at issue and merely found the
opinions of Drs. Postovoit and Collingwood supporting a finding of not disabled and deserving of some
weight.  (AR 17-18.)  The Court found the ALJ barely mentioned the evaluation, failed to enumerate the
23  weight assigned, and made no effort to compare inconsistencies between the opinions and those of the
medical expert, including the specific statements at issue in the current proceeding.  (AR 634-35.)

REPORT AND RECOMMENDATION
PAGE - 8

1222-23 (9th Cir. 2010).

In this case, the ALJ did not err in considering the assessed social limitations. He accounted for the opinion on public contact by limiting plaintiff to superficial, incidental contact. (AR 457.) He accounted for the opinion regarding co-workers by finding plaintiff could work in proximity to, but not in coordination with others. This expressly provides for the opinion plaintiff should not have to constantly deal with others or utilize close collaboration/negotiating skills, and allows for one of the two possibilities of either working with a few co-workers *or* more on her own. Dr. Postovoit did not find proximity to co-workers, in and of itself, to be an issue. The ALJ therefore reasonably deemed the RFC limitations generally consistent with the assessed limitations.

The ALJ also adequately explained his conclusion by referring to his earlier and extensive discussion of the evidence of plaintiff's social abilities. He found moderate impairment in social functioning, noting plaintiff's bible study and regular church attendance, church program volunteering, varying and up to daily attendance at narcotics and/or alcoholic anonymous (NA/AA) meetings, regular contact with her sponsor, participation in group therapy, maintenance of her relationship with her mother, ability to become and stay involved with her significant other, vocational rehabilitation class attendance, and ability to live in recovery housing, with similarly challenged people and without reported difficulty. (AR 456.) The ALJ noted other activities, including a trip to Oklahoma and to a church camp, taking her children to parks and on walks, and her role as primary caregiver to her five children living at home, one of whom is hyperactive and another not of school age, as well as her other accomplishments and activities, such as obtaining custody of her children out of protective custody and securing admission for her kids to Head Start and a private school. (AR 459.) The ALJ found that, while plaintiff may have difficulty with social interaction and concentration, she "retains some ability to perform simple tasks and engage

1    in some meaningful interactions", could be around others in different types of group settings, and

2    "can organize her day, plan activities, and even go on longer outings away from home." (AR 460.)

3    Plaintiff does not directly challenge and the Court does not find error in this assessment.

4          Nor did the ALJ err in rejecting a need for more than the typical amount of additional

5    supervision or support provided at the start of a job, or in concluding the unskilled, repetitive, and

6    routine work identified in the RFC inherently included the clear duties, routines, and minimal

7    decision-making provided for in the medical opinion.  Plaintiff asserts the identified restrictions

8    suggest the need for a job coach or sheltered work setting, which would not allow the ability to

9    perform substantial gainful activity.  Yet, Drs. Postovoit and Collingwood could have, but did not

10   opine plaintiff could only work with a job coach or in a sheltered work setting.  Plaintiff also argues

11   the ALJ lacked any record support.  However, both the VE testimony and common sense provide

12   sufficient support for the ALJ's conclusions.  (*See* AR 602 (VE addressing initial training period:

13   "Well, these are unskilled jobs, so the – an individual would be expected under normal

14   circumstances to be able to understand and remember things and be proficient at the job after about

15   30 days."))  For this reason, and for the reasons stated above, the ALJ adequately addressed the

16   opinions of Drs. Posovoit and Collingwood.

17   B.    Dr. Norma Brown

18          On February 14, 2007, examining psychologist Dr. Brown assessed plaintiff as mildly

19   limited in the ability to interact appropriately in public contacts; moderately limited in relation to

20   simple instructions and her ability to care for self; moderately-to-markedly limited in the ability to

21   perform routine tasks; markedly limited in relation to complex instructions, the ability to learn new

22   tasks, exercise judgment, and make decisions, control physical or motor movements and maintain

23   appropriate behavior; and severely limited in the ability to relate to co-workers or supervisors and

1    appropriately respond to and tolerate the pressures and expectations of a normal work setting.  (AR

2    234.) Dr. Brown explained: "Very poor cognitive skills due to high anxiety and depression.  Very

3    overwhelmed. . . .  Has attitude [problems]; easily irritated; [low] tolerance for frustration."  (*Id.*)

4    She found mental health intervention likely to restore or improve plaintiff's ability to work in a

5    regular and predictable manner, and deemed plaintiff chronically mentally ill.  (AR 235.)

6        In 2009, the ALJ described some of Dr. Brown's findings, including that plaintiff would

7    improve with mental health treatment, found the opinion supported by the record, and afforded

8    some weight to the portion of the opinion supporting the RFC assessed.  (AR 16-17.)  On review,

9    the Court noted the ALJ's reliance on records showing improvement dated more than a year after

10   the initial onset date and Dr. Brown's evaluation, and that Dr. Brown had opined limitations

11   expected to last at least twelve months.  (AR 631-32.)  The Court found an absence of specific and

12   legitimate reasons for rejecting the opinion or a sufficient discussion of facts and conflicting

13   medical evidence.  (AR 631-32, 636.)

14       In 2014, the ALJ pointed to differences between the examinations by Dr. Brown and by

15   Dr. Dan Neims two months earlier, and noted the relevant period began the month after Dr.

16   Brown's evaluation, when plaintiff started treatment and showed significant improvement when

17   not faced with situational stressors.  (AR 663.) Also, Dr. Brown found marked limitations in

18   controlling movement and maintaining appropriate behavior without explanation other than

19   plaintiff's subjective allegations, "which suffer from significant credibility issues."  (*Id.*) In

20   remanding the matter back to the ALJ, the Appeals Council noted the absence of any rationale or

21   support for the conclusion Dr. Brown relied on plaintiff's subjective complaints or an explanation

22   as to why the ALJ rejected the various cognitive and social factors Dr. Brown found marked,

23   despite having found marked impairment in social functioning at step two.  (AR 675.)

REPORT AND RECOMMENDATION
PAGE - 11

In the most recent decision, the ALJ assigned little weight to Dr. Brown's opinion, viewing it as not fully reliable, accurate, or helpful in relation to plaintiff's functional capacity in and after March 2007, the beginning of the relevant time period.  (AR 464.)  Dr. Brown did not assess plaintiff during the relevant period and noted plaintiff needed treatment for bipolar disorder and PTSD.  After beginning treatment in March 2007, plaintiff showed significant improvement, as Dr. Brown had expected:  "client continuing with good mood and success stories in her life, attending bible study, forming relationships, maintain contact with her substance abuse sponsor, caring for her 4 children, applying for school, and working with the public housing authority." (AR 464-65 (citing AR 389).)  Getting custody of her children back required attendance at multiple meetings, proceedings, and treatment sessions, she cared for her children once she obtained custody, and she was able to develop and sustain a relationship with her then current boyfriend. (AR 465.)  "None of these things would have been seemingly possible if Dr. Brown's assessment was a true, unchanging, and accurate portrayal of the claimant's functional capacity during the relevant period."  (*Id.*)

The ALJ also found other factors to reduce the reliability of Dr. Brown's opinion.  Dr. Brown relied heavily on plaintiff's subjective reports, such as self-reported panic attacks, history of assaults, nightmares, and decreased social involvement.  There was no indication she reviewed other records, including the mental examination conducted by Dr. Neims two months earlier:  "Dr. Brown, at the very least, would have seen Dr. Neims's opinion showing a greater functional capacity and discrepancies in self-reports like substance abuse (no meth abuse since April 2005 vs. no meth abuse for 7 months)."  (*Id.*)  Dr. Brown did not assess the effect of substance abuse, or indicate the effect of continued abstinence, along with treatment, on plaintiff's future functional capacity.  (*See* AR 233-34).)  She appeared to focus little on plaintiff's substance abuse overall, in

contrast to Dr. Neims.

The ALJ's assessment of the opinion of Dr. Brown remains deficient.  As in 2009, the ALJ cited to evidence of improvement dated more than a year after Dr. Brown's opinion.  (AR 389 (July 2008 treatment note).)  It remains unclear whether the ALJ found evidence of improvement contradicting Dr. Brown's assessment of functional limitations within the twelve months accounted for in her evaluation.  Also, while citing to evidence reflecting some reliance on plaintiff's reporting (*see* AR 233, 465), it is not clear such reliance formed a significant basis for Dr. Brown's opinion.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject opinion if based "to a large extent" on discredited self-reports and not clinical evidence; "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (ALJ does not provide sufficient reasons for rejecting physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."; noting nothing in record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations).  In fact, the evaluation clearly reflects Dr. Brown's consideration of her own observations, MSE findings, and test results.  (*See* AR 233-38.)

Nor did the ALJ persuasively rely on either the date of Dr. Brown's evaluation, or perceived differences with the evaluation Dr. Neims completed some two and a half months earlier. Both Dr. Brown and Dr. Neims assessed plaintiff outside of the relevant time period.  Dr. Brown's assessment, shortly after plaintiff's alleged onset date, only three weeks before the SSI application date, and assessing limitations lasting at least twelve months, is not reasonably rejected based on

its timing.  In addition, while Dr. Neims assessed lesser functional impairment, his findings did not greatly differ from those of Dr. Brown.  In both examinations, plaintiff had impaired performance on trail making and serial sevens, scored in the non-malingering range on the Rey-15 factor text, and exhibited poor memory.  (AR 232-38, 245-53.)  Dr. Neims observed tense posture/motor activity, slow, impeded, and pressured speech, and tangential, black/white thinking, restricted/constricted affect, and dysphoric mood (AR 352-53), while Dr. Brown noted plaintiff cried throughout the evaluation, had slow, quiet speech, labile affect, and dysphoric mood (AR 236, 238).  Finally, Dr. Brown did not ignore the issue of substance abuse.  She identified methamphetamine dependence in early full remission, and discussed plaintiff's ongoing treatment. (AR 233-34.)  Dr. Neims' evaluation, conducted closer in time to plaintiff's substance abuse, unsurprisingly involved a greater focus on that issue.  The ALJ should, for all of these reasons, reassess the opinion of Dr. Brown on remand.

C.    Judie Kasnick, MA, LMHC

Plaintiff's counselor, Judie Kasnick, completed a form for the Washington State Department of Health and Human Services in February 2011.  (AR 1079-81.)  Kasnick stated plaintiff suffers from severe PTSD, manifested as anxiety, fear, avoidance, isolation, and nightmares leading to sleep deprivation.  (AR 1079.)  Plaintiff "may function well for a while, but then something will trigger her and the extreme symptoms will recur.  She would like to work, but her mood instability will continue to be a barrier." (*Id*.)  Plaintiff had limitations in interacting with or being around people, her ability to function will be affected by the amount and quality of sleep she can manage, and her medications often affect her ability to perform.  Kasnick deemed plaintiff unable to participate in any amount of work activity, and able to participate in one-to-ten hours of activities related to preparing for and looking for work.

REPORT AND RECOMMENDATION
PAGE - 14

1    In 2014, the ALJ attributed the completion of this form to Yvonne Reinke, a WorkFirst

2  employee, who was not a regular treatment provider and had never examined plaintiff. (AR 663.)

3  The ALJ found the conclusions based on plaintiff's subjective allegations, which the ALJ found

4  of limited credibility, as "the claimant had no incentive to even attempt to work, raising further

5  issues regarding the veracity of this report." (AR 663-64.)  The Appeals Council noted the

6  misattribution and found further consideration necessary. (AR 677-78.)

7    In the most recent decision, the ALJ gave the opinion little weight. Kasnick offered no

8  basis for her opinions and the assessment was not consistent with plaintiff's actual activities, which

9  clearly indicated she could have some meaningful interactions with others. (AR 465 (pointing to

10 custody-related events/requirements, new relationship with significant other, volunteering, trips,

11 camps, AA/NA meetings).) "The claimant did not, and does not, have a complete inability to be

12 around, socialize, and otherwise interact with others." (*Id*.) Kasnick considered factors unrelated

13 to impairments in stating plaintiff's ability to function would be affected by her quality of sleep

14 and management of medication: "The meaning of this statement is unclear, and it certainly

15 suggests situational factors may have a significant impact on her functional capacity (e.g. problems

16 with consistent medication use)." (*Id*.) Further, Kasnick did not provide an opinion appropriate

17 for an RFC because she seemed to consider functional capacity as one point in time, with no

18 indication of situational factors. (*Id*. ("tolerance right now is very impacted due to heightened

19 anxiety and hypervigilance").)  Treatment notes showed plaintiff "only experienced significant

20 distress at that time after watching a movie called 'For Colored Girls,' which caused nightmares

21 and very little sleep." (AR 465-66.) She also had anxiety caused by the possibility of her public

22 assistance ending. (AR 466.) Kasnick did not discuss any of these situational factors, and the ALJ

23 did not view her opinion to be relevant, reliable, or accurate.

REPORT AND RECOMMENDATION
PAGE - 15

1    The ALJ erred in considering this evidence.  Kasnick did not find plaintiff wholly incapable

2    of interactions with others.  She opined plaintiff would have limitations in the area of social

3    interactions, dependent on whether or not she was experiencing an exacerbation of her symptoms.

4    (*See* AR 1079.)  The ALJ also erred in construing some factors as merely situational stressors,

5    rather than symptoms of plaintiff's impairments.  Kasnick, for example, specifically tied plaintiff's

6    sleeping difficulty to her PTSD-related nightmares.  (*See id*.)  Nor is it clear why the ALJ found

7    Kasnick offered no basis for her opinions.  The ALJ should, as such, also reassess the evidence

8    from Kasnick on remand.

9                                                            RFC

10    Plaintiff avers error in the ALJ's identification of RFC limitations of "off-task up to 9%",

11    but still able to meet the minimum production requirements of a job, and two absences a month.

12    (AR 457.)  The Appeals Council found the ALJ, in 2014, failed to provide an adequate explanation

13    in support of the "off-task" limitation, and did not explain how it was supported or derived from

14    the evidence of record.  (AR 676.)

15    In the 2016 decision, the ALJ provided the following explanation:

16    I acknowledge that none of the opinions include a limitation for
       being off-task 9% of a workday or absence from work once every 2
17    months.  However, I add these as precautionary measures in light of
       her complaints of difficulty with concentration due to factors like
18    anxiety, depression, and insomnia.  Most jobs generally involve
       some degree of non-productivity.  The [VE] testified that an
19    employer generally would tolerate someone being off-task up to
       10% along with 1 day of absence per month.  These limitations, in
20    other words, are not necessary in a [RFC] because they are factors
       that most employers would tolerate as part of their normal
21    employment environment.  I include them to ensure adequate
       consideration by the [VE] and to preclude jobs (if any) that would
22    require continuous and constant concentration throughout the entire
       workday with no absences from work.  This level of flexibility is
23    important in the claimant's situation given that she does have severe
       mental impairments that would warrant some flexibility by the

REPORT AND RECOMMENDATION
PAGE - 16

1     employer.

2 (AR 463 (citing 2016 hearing testimony).)

3    Plaintiff argues this statement provides no explanation and identifies no support in the

4 record for the assessed limitations.  She suggests the limitations appear "results-based," and points

5 to criticism of this type of assessment by this Court in other cases.  *See, e.g., Hystad v. Berryhill*,

6 C17-1702-RAJ, 2018 U.S. Dist. LEXIS 146572 at *5-6 (W.D. Wash. Aug. 28, 2018) (ALJ

7 accorded some weight to treating physician's opinion plaintiff would be off-task ten percent of a

8 workday, but found plaintiff even more limited due to side effects of long-term pain medication

9 use; finding ALJ explained why the RFC limitation exceeded ten percent, but "no explanation for

10 how he reached the 14 percent figure" and that, without a specific explanation of the record

11 evidence supporting the finding, it "appears result-oriented."); *Seymour v. Berryhill*, C17-5849-

12 JCC-BAT, 2018 U.S. Dist. LEXIS 124645 at *10 (W.D. Wash. Jul. 25, 2018) (instead of citing to

13 specific evidence supporting a finding plaintiff would be off task 10%, as previously directed by

14 the Court, ALJ referred generally to daily activities, without an explanation as to how the activities

15 were linked to the ability to maintain concentration during a workday or how they lead to the

16 finding).

17    RFC is the most a claimant can do despite her limitations and is assessed based on all

18 relevant evidence in the record.  20 C.F.R. § 416.945(a)(1).  An RFC must include all of the

19 claimant's functional limitations supported by the record.  *See Valentine*, 574 F.3d at 690.  As

20 noted above, "there is no requirement in the regulations for a direct correspondence between an

21 RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682

22 F.3d at 1288.  Also, the RFC determination rests with the ALJ, 20 C.F.R. §§ 416.927(d)(2),

23 416.946(c); SSR 96-5P, and includes the responsibility to translate and incorporate clinical

findings into a succinct RFC, *Rounds*, 807 F.3d at 1006. The "overinclusion of debilitating factors" may be deemed harmless. *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("The ALJ apparently contradicted herself by including in the hypothetical as fact that claimant was mentally limited to jobs that required no public interaction due to pain and medication even though the ALJ ultimately discounted claimant's relevant pain testimony as not credible. However, this overinclusion of debilitating factors is harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration.")

The Commissioner asserts that, even if the ALJ could be said to have erred, the error is harmless in light of plaintiff's failure to point to evidence suggesting greater limitation. Plaintiff, in reply, asserts the ALJ may have found her more limited had he considered evidence concerning her ability to persist or in relation to absences. She describes and points to various aspects of the record supporting her symptoms. (*See* Dkt. 15 at 4-5.) However, other than the challenged medical opinions and lay testimony, plaintiff does not identify any specific error on the part of the ALJ in relation to either the evidence cited or other evidence in the record.

The Court, in any event, finds no need to address whether the explanation for and inclusion of the identified limitations constitutes reversible or harmless error. This matter is subject to remand for the reasons stated above. Given the ALJ's explanation that the limitations at issue were merely precautionary, and given plaintiff's objection to their inclusion in the RFC, the ALJ should omit the limitations from the RFC on remand. The ALJ may inquire into acceptable amounts of time off task and absences through additional VE testimony, and any impact on the jobs identified at step five based on the RFC. If the ALJ were to again find plaintiff not disabled, plaintiff would be precluded from arguing error based on the absence of the challenged limitations.

As stated above, plaintiff does not establish error in the ALJ's failure to adopt greater limitations in relation to task persistence or attendance.

Lay Testimony

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting lay testimony from her mother (*see* AR 432-35, 591-95) and friend (*see* AR 426-31). The ALJ contrasted the friend's statement that plaintiff had difficulty completing day-to-day tasks, with evidence plaintiff had been competent enough to get her children back from Child Protective Services, with no further involvement. The ALJ agreed with the friend's observation of social difficulties, but found no further limitations warranted given the breadth of social interactions reflected in the record, including attendance at meetings and church, her ability to begin and sustain a relationship, and her involvement in her children's activities and school. (AR 467.) The ALJ found the same reasoning to apply to plaintiff's mother's statements regarding social interaction. (AR 468.) He further found that, while plaintiff may receive assistance from her mother, daughter, and significant other, the record showed times when plaintiff could not access such help, such as when all three of those individuals were working. Plaintiff was solely responsible for her youngest child during those times periods, and had shown her ability to continue to care for herself and her children, with or without assistance. The ALJ also contrasted plaintiff's mother's depiction of the level of assistance she provided in caring for the children, with her observations as to the level and quality of care provided by plaintiff: "It would make little sense to claim that the claimant was a good mother if the claimant required the level of assistance . . . indicated. Nor would it make sense that the claimant would rely so heavily on others for help while still retaining custody of her children (which in part relies on her showing that she could care for her children adequately)." (*Id.*) Treatment notes indicated plaintiff viewed herself as the primary care provider and, in fact,

complained about the lack of support she received.

Germane reasons for discounting lay testimony include inconsistency with evidence of a claimant's activities and the claimant's reports. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). Plaintiff asserts the ALJ failed to show the types of activities performed were inconsistent with the reports of her family and friends. This assertion does not demonstrate error. As the Commissioner argues, the ALJ reasonably construed the degree of social limitation identified by the lay witnesses as inconsistent with the evidence of plaintiff's activities. (*See, e.g.*, AR 428 (stating plaintiff "constantly wants nothing to do with people or to not be around people") and AR 434 (stating plaintiff "thinks everyone is against her" and "at times cannot get along with anyone").) The ALJ's germane reasons for assigning little weight to the lay testimony withstand scrutiny.

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## **DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 20

ready for consideration by the District Judge on **March 8, 2019**.

DATED this 19th day of February, 2018.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 21